OPINION OF THE COURT
Bruce McM. Wright, J.
Hedging its process with a prepetition "Statutory” 30 days’ notice of termination of tenancy, as well as a "Thirty Days’ Notice of Termination Of Possession Pursuant To Month-To-Month Tenancy Agreement”, the landlord commenced this holdover proceeding. The tenant now moves to dismiss, claiming that the petition fails to state a cause of action and that other fatal defects deprive the court of subject matter jurisdiction.
I THE MANNER OF TERMINATION OF THE RESPONDENT’S TENANCY
Chapter 247 of the Laws of 1977 repealed subdivision 8 of section 721 of the Real Property Actions and Proceedings Law, so as to remove legal representatives, attorneys, agents and assignees from the category of persons eligible to commence a summary proceeding. One reason was to eliminate confusion in identifying the real party in interest, when judgments and final orders were to be entered.
Did the amended section 721 of the Real Property Actions and Proceedings Law mean that notices to terminate a tenancy, indispensable precedents of eviction process, are inseparable from the proceeding itself, and thus, must be authored by those authorized to sign the petition itself?
One of the arguments advanced by the tenant for dismissal is that the notice to terminate her tenancy was signed by Stephen I. Lampach, "Lampach & Derr, Attorneys for Landlord, Adina 74 Realty Corporation”, with an address of the lawyers and not that of the ultimate petitioner.
The landlord here is described as a Panamanian corporation. The tenant occupies an apartment at 6 East 74th Street. Her last lease with a different landlord expired October 31, 1978. On October 9 of that year, her landlord wrote a letter to her, stating that the sale "of the building appears imminent”; that he would "be glad” to have her "occupy the premises” at a rental of $700 per month, "for the time being”; that he would notify her in writing at least 30 days prior to the date that possession of the premises would be required; and that the tenant had the right to give the landlord 30 days’ notice if she wished to move.
*636 Both parties signed that letter as their "agreement”. The nature of the term, if any, conferred upon the tenant, has been the subject of competing arguments between counsel for the landlord and the tenant.
It is found that what the October 9, 1978 letter-agreement accomplished is what is known as an indefinite tenancy, except that the monthly rental reserved is unequivocal. Section 232 of the Real Property Law provides that agreements for the occupation of real estate in New York City, "which shall not particularly specify the duration of the occupation, shall be deemed to continue until the first day of October next after the possession commences under the agreement.” The acceptance of rent thereafter creates a month-to-month tenancy, pursuant to section 232-c of the Real Property Law. (Bay West Realty Co. v Christy, 61 Misc 2d 891, 895.) Here, the tenant’s old lease expired October 31, 1978. She began her present occupation of the property as of November 1, 1978, under her letter agreement with her prior landlord. By operation of statute (Real Property Law, § 232), her term continued until the first day of October, 1979. The acceptance of rent after November 1, 1978, defined the tenant’s status as month to month (Real Property Law, § 232-c).
It thus became proper and needful for the successor landlord, who became such early in 1979, to serve a 30-day notice of termination of the tenant’s right to remain on the property. The tenant claims that the petitioner is a stranger to her and that it was her prior landlord who promised to notify her. She points to the circumstance that the petition is verified by an officer of the corporate landlord and that the same dignity should have been accorded the notice to terminate.
The consequence of the change in title of the property was to place the new landlord in the shoes of the old one. The new landlord assumed the duties earlier assumed by the old one. Those duties appear to have been defined by the statutes cited. The quarrel, in substance, is with the notice of termination. If that falls, the tenant urges, the entire proceeding must topple with it.
Section 232-a of the Real Property Law governs the removal of tenants holding over and requires that, "at least thirty days before the expiration of the term”, that the landlord or his agent "serve upon the tenant, in the same manner in which a notice of petition in summary proceedings is now allowed to *637 be served by law, a notice in writing to the effect that the landlord elects to terminate the tenancy”.
It has been held that both monthly and month-to-month tenancies are for indefinite periods and must be terminated by a 30-day notice (Pecoraro v Ryan, 39 Misc 2d 949). The petition, which follows service of the notice to quit, must state, either specifically how the notice was served, or must include a copy of the notice and its affidavit of service (Margolies v Lawrence, 67 Misc 2d 468). Strict compliance with the statute is a must (28 Mott St. Co. v Summit Import Corp., 64 Misc 2d 860; Wager v Haberman, 85 Misc 2d 314).
As the statute clearly and without ambiguity permits the service of a notice to quit by the landlord "or his agent” (Real Property Law, § 232-a), there can be no question about the propriety of the service having been made here by the new landlord’s attorneys, whose agency is revealed along with the name of the principal in whose name the lawyers were acting.
Those arguments of the tenant which hold that, since there is no termination date in the 1978 agreement, there can be no holding over; that both the 30-day notices were improperly issued; and that the signature of the landlord’s lawyers is improper on the notice to quit, are all dismissed as viable contentions.
II THE PETITION’S ALLEGATIONS
The tenant argues, also, that the petition contains improper allegations, in that it swears that the notice to quit was served in the manner provided by law, "a copy of which with proof of service is hereto annexed and made a part of this Petition.” In truth and in fact, it is said, the proof of service of the notice was not annexed to the petition, either to the petition served upon the tenant, or that which was filed in court.
The notice of petition reveals an affidavit of service sworn to on February 12, 1980, claiming personal service upon the tenant. It was filed with the court on February 13, 1980. The 30-day notice, however, was not served personally, but, as the affidavit of service says, by affixing a copy to the tenant’s door at 8:30 a.m. on December 31, 1989 [sic] and that, on the same day, i.e., December. 31, 1979, a copy of the notice was mailed to the tenant by certified mail.
It is clear that that affidavit of service was not annexed to the notice of petition, for it was not filed until February 15, *638 1980, some six weeks after its service and three days after the notice of petition was filed.
Does this tardiness in filing and the neglect to annex it to the notice of petition, reveal a flaw in procedure which commands dismissal of the proceeding? And, does the bare allegation of the petition, that the notice was served in the manner provided by law, suffice?
The tenant relies heavily upon Margolies v Lawrence (67 Misc 2d 468, 469-470, supra) where the opinion of the much respected Irving Younger, formerly a Judge of this court, says, in the blunt clarity which is his hallmark, that: "For the petition merely to allege, as here, that a notice 'was served in the manner provided for by law’ is insufficient, for subdivision 4 of section 741 of the Real Property Actions and Proceedings Law requires that 'facts,’ not conclusions, be stated.”
The hard sense of this reasoning is that the tenant is entitled to know how the notice to quit was served, so that the tenant will be able "to tell whether or not the petitioner has complied with section 232-a” of the Real Property Law (Margolies v Lawrence, supra, p 470).
Margolies further held that, where there is no specific statement in the petition describing how the notice to quit was served, a copy of the notice and its affidavit of service "must” be annexed to the petition.
Is the failure of the landlord’s petition to have annexed to it a copy of the notice to quit, with an affidavit of service of the latter, trivial, or does it go to the heart of jurisdiction?
In Jackson v New York City Housing Auth. (88 Misc 2d 121), the Appellate Term, First Department, indicated a rather testy impatience with lawyers who seek to elevate to substance trivial defects in papers, which are easily amendable nunc pro tune, where no prejudice as such can be shown. As Jackson is of later vintage than Margolies, it is Jackson which should control a reading of the alleged defects here.
"While liberality is generally shown in permitting amendments to pleadings, in the absence of prejudice (CPLR 104, 3026), yet where the party lacks legal capacity to sue, such a defect is not amendable, particularly in statutory proceedings.” (Zisser v Bronx Cigar Corp., 91 Misc 2d 1025, 1027.)
While there is no question here concerning capacity to sue, the emphasis is upon the strict allegiance which must be paid to statutory proceedings. And, in 1550 Broadway Assoc. v El- *639 Pine Drinks (96 Misc 2d 707, 709), it was held that, despite Jackson, "a summary proceeding is a statutory creation”, and that there must be strict compliance . with the governing statutes for jurisdiction to lie.
More recently, in Fisch v Chason (99 Misc 2d 1089, 1090-1091, 1093), it was stated:
"A petitioner’s failure to comply strictly with the statute results in the forfeiture of its right to maintain the special proceeding and must culminate in the dismissal of the action. (Reich v Cochran, [201 NY 450]; Handschke v Loysen, [203 App Div 21]; Goldman Bros. v Forester, 62 Misc 2d 812; 300 West Realty Co. v Wood, 69 Misc 2d 850, affd 69 Misc 2d 582; Zisser v Bronx Cigar Corp., 91 Misc 2d 1025.) * * *
"Summary proceedings, being wholly legislative in origin, demand strict compliance with the statute.”
On the other hand, where no prejudice has been demonstrated and a de minimis variation from strict compliance is revealed, that should not be tolerated to undo an otherwise proper proceeding. In Norwich Realty Affiliates v Rappaport (29 AD2d 814), the subscription of a three-day notice was by a corporate landlord’s president and agent, rather than in the name of the corporation itself. The court held that the notice was proper and not misleading under the circumstances there, for it appeared that all concerned knew who the president was and what he was president of. In like manner here, the 30-day notice reveals the status of the signer as one of the lawyers for the landlord and the corporate landlord’s name is set forth.
This árgument by the tenant is therefore rejected as trivial and unworthy of dismissal of the proceeding.
Only one ground raised by the tenant is entitled to be regarded as substantial.
That ground is the omission of the petitioner to have annexed to its petition a copy of the 30-day notice and an affidavit of service reflecting its method of service. However, the notice was annexed to the copy of the petition served upon the tenant. The landlord insists that the method of its service can be accomplished by a motion for nunc pro tune relief. Because the tenant can show no genuine or real prejudice by reason of the fault relied upon, the omission described is not regarded as fatal to jurisdiction in this court. (Jackson v New York City Housing Auth., 88 Misc 2d 121, supra.)
*640 III SERVICE OF THE 30-DAY NOTICE
The tenant cites the recent affirmance by the Appellate Term of Kambouris v Agena (NYLJ, Feb. 6, 1980, p 14, col 1). It appears to have been held that service of a 30-day notice must fail, where other than personal service is claimed and the process server has not made "reasonable application” to effect substituted service, prior to making conspicuous place service.
There is nothing before the court to show that the process server knocked more than once, or made any other efforts to locate someone other than the target of the process to accept service. This is not a case of a process server seeking entry to a bar and grille at 6:30 a.m., when, normally, it might be expected that such enterprises are closed. Here, the process server swears that he sought to make service at 8:30 a.m., a not unreasonable hour to expect a householder to be in, or on the brink of departing for work. The tenant has not shown that there was someone at home of suitable age and discretion prepared to receive service in her behalf. The likely possibility of making successful service seems excellent at 8:30 a.m. and seeking to make service at that hour appears to define the elements of a "reasonable attempt.”
The tenant’s reliance upon Kambouris v Agena (supra) lacks probative force, without some showing which tends to demonstrate that the effort made by the process server was unreasonable, inept, or misguided. No such showing has been made or attempted.
IV THE CROSS MOTION
The landlord cross-moves for an order directing the tenant to post security for "rent”, although I assume that the landlord intends use and occupancy, since tenancy has been terminated. The tenant makes oath that she has affirmative defenses and offsets to the landlord’s money claims.
What the landlord seeks, in effect, is a partial summary judgment. For such relief to lie, there must be a full evidentiary showing, a kind of minitrial on paper. The drastic remedy of a summary disposition requires full pleadings to be before the court. They are not. In addition to elimination of issues of fact, there must also not be posed matters of credibility. Here, as: "On a motion for summary judgment the court is not to determine credibility, but whether there exists a *641 factual issue, or if arguably there is a genuine issue of fact”. (Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338, 341.)
CONCLUSION
Both the main motion to dismiss, on various grounds, and the cross motion seeking the posting of security are denied. The trial is ordered to proceed in regular course (if calendar conditions permit), on the fifth day of May, 1980, at 9:30 in the forenoon.